First, that the district court erred in failing to grant Worldwide's motion for JMOL on validity. USRB's evidence showed nothing more than that individual elements of the patent claims could be found scattered somewhere in the prior art, and that's the very same prior art that was considered by the patent examiners. Well, with respect to the 685 patent, the only thing that was missing in the prior art potentially was combining it as a pin-mounted spring, right? With respect to some claims, that's correct. With respect to claim 13, that's not correct, as we've pointed out. There's an additional limitation that is not shown to be met by the prior art. It's not even argued by USRB. Okay, but with respect to the claims other than claim 13, there's this widespread use of springs mounted on pins. It's sort of difficult to see why that isn't obvious, right? Well, the problem here is, Your Honor, and I'll move to obviousness. I was going to talk about anticipation. But on obviousness, the problem was that all they did in their evidence was to say, well, these things are somewhere in the prior art. They never connected the dots to explain why one of skilled in the art would be motivated or have any reason to combine those elements, as did the patentee in 13. So it's so common to mount a spring on a pin. It may be common, but in these circumstances, was it obvious to one skilled in the art at the time? And there was absolutely no evidence. The Supreme Court said in KSR, you can use common sense, but there's got to be some rational underpinning for the use of common sense. And in this case, USRB never provided that rational underpinning. They made no attempt to say, yes, one skilled in the art would have done this at the time. You can't find that in the record anywhere. It relied on basically speculation. And right now, as we look at it, oh, gosh, it's easy to see. But that's hindsight. And that's what the Supreme Court said in KSR. You still can't apply. There's got to be some reason in the evidence to make that leap. And here, there is no reason in the evidence to make that leap. What about the two CRAW references that were cited? Isn't there a spring limitation in that? There is a spring in the CRAW 717. I think there's also a spring in the other one. What about the 254? Beg your pardon? What about the 254? Yes, I believe that, too. So they were both present, though, right? So why wouldn't it be able to be combined with the other references, the Snyder reference, for instance? The CRAW references are directed to a radically different structure and concept than the patents in suit. The question would be, okay, if you want to put a spring in, how and why are you going to do it? Why and how are you going to select CRAW's spring and put it in here? And that's what's missing from the evidence. There's absolutely no explanation, no reason, no indication of any motivation why one skilled in the art would go and pick that spring from CRAW because the spring in CRAW serves an entirely different purpose. What about anticipation of the 946? I mean, you had this testimony by, what's his name, Whaley? Yeah, well, Whaley. Wait, wait, wait. I'm sorry. Who testified that the Horne reference was anticipatory of the 946, and there was no rebuttal testimony on that point, and his testimony was not conclusory. So what's wrong with him? Why couldn't the jury find anticipation of the 946? Well, I disagree on maybe three points. First, his testimony was conclusory. Secondly, he didn't. He waltzed around the question of whether Horne met the requirement that the travel bar was what opened and closed the hinge plates. He waltzed around that by saying, oh, the blocking elements have to be moved by the travel bar before the hinge plates can be moved open and closed. But he flatly never said in his direct that the travel bar moved the hinge plates. There was no rebuttal, but he was cross-examined at page A10691. He was cross-examined there, and he admitted that, oh, yeah, that's right. The lever is what moves the hinge plates. He admitted that. So he admitted that that limitation in the 946 was missing from Horne. Which limitation? The limitation that requires that the travel bar move, be operatively connected to move. What's the language? Just a moment. The exact language is This is in Claim 1 of 946, Column 9, about line 60. The control structure comprising a travel bar operatively connected to the hinge plates and movable in translation relative to the elongate plate for moving the hinge plates between the open and closed positions. Horne doesn't do that. That's the limitation that Whaley was finally forced to admit on cross-examination was not contained in Horne because it's Horne's lever with the opening arms and closing arms that actually moves the hinge plates. So that is the answer on anticipation. Isn't the lever doing that by acting on the travel bar? No. If you look at Horne carefully, there are opening arms and closing arms. I think they're called 40 and 42. The lever has What page are we at? Of Horne? Let me find it, please. If you look at Column 6, beginning at about What page of Horne? This is Column 6 of the specification of Horne. Yeah, but what page? I don't have I can't look at it. Oh, I'm sorry. I'm sorry. I'm not looking at what you're looking at. That would be I'm sorry, I don't have an appendix page number. I apologize, but this would be Column 6 of the Horne patent. And about line 28, which refers to the operating lever further includes an opening arm or cantilever 40, which abuts against the carrier rails in the opening direction and pivots these from the close to the open position. So that clearly tells you that it's the lever, the opening arm on the lever that is pivoting the hinge plates. And then it goes on and talks about another arm on the lever 18 and it says the operating lever 18. Okay, and I've got a page number now. This is A12503. A12503. And that's Column 6. And it lines 28 through 36, 37. It explains exactly how the Horne lever opens and closes the hinge plates. It's by the lever, not by the travel bar. Well, he seems to be saying at 10691, it's the travel bar in conjunction with the lever that moves it, right? Who says that, Whaley? Yeah. Yeah, well, what he means there, and he went through it in some detail, both in direct and cross, but he basically admitted what he was saying was there are little blocking elements. And the travel bar, or whatever you call it, I'm going to call it a travel bar. It's the wires 44 in Horne. They do move little blocking elements. Those blocking elements are moved by the travel bar. But what moves, but they don't move the hinge plates. What moves the hinge plates, which is what limitation requires, is the lever in Horne and only the lever. And that's the difference. Wait, there's an assumption there, only the lever. Yes, because absent the lever, there's no way to move the Horne with the hinge plates. Absent the opening arms and the closing arms on the lever, there is no possible way of opening the hinge plates in Horne. So I'd like to return to obviousness, if I may, and just conclude that by emphasizing again that under KSR, there's got to be some rational underpinning for concluding, making the legal conclusion that an invention was obvious. Here, there was nothing because all of their evidence never went to connecting the dots between the references, explaining why one skilled in the art would go to this reference and pick it out and combine it with something else. That's the essence of the legal conclusion of obviousness. If there's no reason to do it, if there's no motivation to do it, it wouldn't have been obvious to one skilled in the art. But you've fallen right back into the TSM test. No, no, I'm not. I'm not excluding the use of common sense, but this is not a try, try again case. There is absolutely no reason to, other than hindsight, for one skilled in the art to go and pick out these individual elements. I'm not relying on the rigid test that the Supreme Court disapproved. I'm accepting that you can use common sense, but what I'm saying here is there's no basis for applying common sense in the way that USRB wants you to because there's no basis for doing so. No basis in the evidence. I talked about Claim 13, and I'd like to address the summary judgment of non-infringement. Claim 13, by the way, wasn't even an issue in the trial. There was no evidence of invalidity specifically directed to Claim 13, so that's another reason why the JMOL should have been granted on Claim 13. But the Supreme, pardon me, the District Court originally granted summary judgment I'm not understanding what the verdict was. Did the jury render a verdict with respect to Claim 13 as to anticipation of obviousness? Yes, even though it was not even an issue. Did you object to submitting the issue to the jury? I think there was... You can't talk over me. Oh, I'm sorry. Did you object to submitting the invalidity issue with respect to Claim 13 to the jury? I don't know how to answer that. I'll have to say no because trial counsel tells me that. There was no objection. But there was no evidence either. With regard to the summary judgment of non-infringement, that was based entirely on the District Court's misapplication of a claim construction that didn't... What was missing in the prior art with respect to Claim 13? Missing in the prior... That the pin was on a... Pardon me, the spring was on a pin, that it was a torsion spring, and that the connection of the travel bar to the lever was closer to the head of the lever than the connection from the lever, the hinge between the lever and the housing. That's in Claim 13. Okay. In any event, the District Court misapplied its claim construction entirely. The result that it ended up with was an application of a construction that was entirely at odds with the specification of the patent. In other words, the claim construction was turned into a claim construction that only referred to the pivoting... of the connection between the travel bar and the lever into a construction that referred to the travel bar and made the travel bar rotate or turn around the lever, for which there's absolutely no support in the specification drawings or anything else. So the summary judgment of non-infringement should be reversed. JML should have been granted on validity, and, consequently, the judgment should be reversed. I thank you. Mr. West, you're well into your rebuttal time. We'll restore two minutes. Thank you. And please, the Court. I'd like to start by addressing the reason to combine issue under the obviousness inquiry, and I'd like to take a step back and explain why we're here today because I think it's pertinent to that inquiry. Mr. Whaley is an inventor at U.S. Ring. I think we know that. What's the answer about the invalidity issue with respect to Claim 13? With respect to Claim 13, Your Honor, we know that there was substantial evidence with respect to invalidity on Claim 13 that was presented. Mr. Whaley went through a detailed presentation. Right, but there are additional elements in Claim 13 that aren't in the other claims. Did Mr. Whaley specifically address Claim 13? His testimony did not specifically go through an element-by-element analysis on Claim 13, Your Honor. Well, that's the problem, isn't it? However, he did offer testimony that it was invalid under the prior art, and he also, just so that... Let me take a step back. Expert testimony is not necessary for a jury to find invalidity under either anticipation or obviousness. This was an issue that was argued extensively by Worldwide at trial because they did not have expert testimony on a number of issues, and this Court has previously held that in an art such as ring binders, where it's not complex. This is not a pharmaceutical case. This is a simple mechanical device. In those instances, expert testimony is not necessary. Well, I understand that argument with respect to the other claims of the 685 and with respect to the 946, but I'm focusing on Claim 13 here. Yes, Your Honor, and the elements that oppose... What is the evidence that the elements of Claim 13 that weren't present in the other claims were in the prior art? All of the limitations of Claim 13 are present in the other claims in the 685 patent, with only one exception that's been identified by Worldwide's counsel, and that's a travel bar pivotally connected to the lever. And I'm reading from page 32 of their reply brief. A travel bar pivotally connected to the lever at a location closer to the head of the lever than the hinge pin connecting the lever to the housing. And if you look in the prior art, Your Honor, all of those limitations are present in the prior art. You have a travel bar... What about that last limitation? Meaning the closer to the head of the lever? You have that, Your Honor. You have in the prior art... Which piece of prior art shows that? You would have Craw, for example, Your Honor. Those references, you have all the references where you have a hinge pin that's connecting a lever. For example, Snyder, Your Honor. In Snyder, and it's in our brief. The diagram, I believe, is on page 34. There's a hinge pin that clearly connects... It's on that page. Your Honor, I apologize. There may not be a diagram of Snyder in the brief. However, in the Snyder reference, Your Honor, which it's conceded that that discloses all the elements except for a spring on a hinge pin. In that reference, you have a lever that is connected via a hinge pin. But the bias... I'm sorry, Your Honor. The spring arranged, the bias was not in that limitation. It's not in Snyder. I agree with you, Your Honor. It is not in Snyder. However, that limitation is in Craw, for example. If you look on page 37 of the brief, there's a blow-up picture of the Craw 717 patent. And that right there shows you you have a spring that is on a hinge pin, and the purpose of that spring is to bias the ring metal towards the closed position. In that exact same reference, which is from 1896, Your Honor, the patentee in that reference said, this invention will be easily understood, and it can be readily modified. And so when you take Snyder, and you combine that with the Craw 717 reference, you get all the limitations, once again, of Claim 13. I'm still not clear. There's this requirement connected to a lever located at a location closer to the head of the lever than the hinge pin connecting the lever to the housing. Which piece of prior art shows that? That would be Snyder, Your Honor. I did find the diagram, and I apologize for the delay. Where is it? It's page 8 of our response brief. There's a blow-up of... Page 8 of the red brief? Correct, Your Honor. Where is that shown? Well, if you look, Your Honor, at... And I don't have the references to the numbers, so I apologize. But if you look at the right-hand side, there's a lever shown there, lower right-hand corner of the diagram. And if you look in the middle of the diagram, there's the travel bar that is shown there as well. Do you see that? What are the numbers? I mean... Well, the travel bar, I believe, is 88. 82, Your Honor. The travel bar is 82? I believe that that is correct. And there's a number... I believe that the lever is 34. There's an arrow that's pointing to the lever generally. And there's two nibs that are shown there at 134. I don't know if the court can see those or not. It's just somewhat difficult to see. Where's the hinge pin? That is what I was going to get to, Your Honor. The Snyder reference in the text of the document, specifically when we put on evidence of this, detailed evidence of Mr. Whaley's testimony at trial, while in this diagram what is shown is two nibs, Snyder also says that another way that would be known in the art on how to connect the lever to the travel bar is to use a pin. And so while you have nibs shown in the diagram, obviously another way that you can connect something is not having just two nibs, but just to have a solid bar that would run through it. And Snyder discloses that, albeit it's not shown in this picture. If I may, I'd like to address a couple of the other points that were raised, one being the non-infringement of Claim 13. While we're on it, we can stay there. The construction of pivotally connected, that was proposed by Worldwide. It's clear they're not arguing that that construction wasn't proper now, they're arguing that it was misapplied. Now if you look at the language, and it's the same limitation we were just discussing, it's a travel bar pivotally connected to the lever. The court construed pivotally connected to mean arranged and capable of rotating or turning about the point of attachment. So let's plug it in. You get a travel bar that's arranged and capable of rotating or turning about the lever. That's what the claim requires. Clearly, and it's undisputed, travel bar does not rotate about anything. It moves longitudinally only in the ring bind. Now Claim 11 in the same patent, the 685 patent, flips it. So now you have a lever pivotally connected to the travel bar. Now that makes sense because the lever does actually rotate and turn about its point of attachment being the lever. The issue is that what Worldwide is asking this court to do is disregard the orientation of those two limitations. They're trying to say that in Claim 11, the fact that you have it one way but then you flip it in Claim 13, that has no meaning whatsoever. That goes against years of this court's jurisprudence and the fact that when you turn in a claim, have meaning. In addition, I would note the patentee did not claim this as a lever and a travel bar that are pivotally connected. That could have been done. Instead, it was worded in a way that meant the relationship of the two to one another and their location, that matter. Take a door, for example. A door rotates in relation to the jam. Now the jam doesn't rotate in relation to the door because only the door moves. It's the same situation here. And so the district court, applying the construction that Worldwide proposed, got it right. And the bottom line is that it's undisputed the accused product doesn't meet that limitation as construed by the court. And with respect to obviousness, reason to combine, Mr. Whaley took a CCH ring medal and he put a pivotal lever on it. CCH is a ring medal that U.S. Ring had been manufacturing for decades prior to the patent application being filed. Customers didn't like it. And so what did he do? And the reason they didn't like it is because when he tried to put it in the bookshelf, the lever drooped out a little bit. And so he had customers that were trying to put it in their bookshelves and it was opening and all the paper was spilling out everywhere. And he says, well, obviously that's bad for business. And so he goes back to U.S. Ring, opens up the patent drawer, the company's been in business for over 100 years, and finds CRA 717, the patent that has a spring on a hinge pin. And the purpose of that spring is to put the lever upright. Everybody knows. It's a pretty crowded art, isn't it? It is a very crowded art, Your Honor. I didn't realize we had so many patents on ring binders. Your Honor, before I became involved in this case, I didn't realize that either. Now I'm well aware. Putting a spring on something to get it to move back, that's been around forever. That's common sense. Everybody knows that. That's all Mr. Whaley did to come up with the accused product in this case. In addition, Dr. Ball, the expert for Worldwide, he conceded that one skilled in the art would be aware that you could use a coil or extension spring to bias the travel bar towards the closed position. Now, granted, Dr. Ball rendered that opinion after the application was filed. But he's rendering the opinion as one of ordinary skill in the art. By definition, he's making that opinion as of the filing date because that's the relevant time period. Well, he's making it as of that time period, but he's looking at the application. Why isn't that hindsight? It's not hindsight, Your Honor. You have all of these various elements, and they're all combined. They're all combined in one application. You look at the application, you say, sure, that's obvious. But is it really obvious after the fact? Well, Your Honor, Dr. Ball isn't saying that he looked at the patent, and because he looked at the patent, he's saying, oh, yeah, now that I looked at the patent, of course I know how to do it. What he's saying is he's opining not on the patent. He's opining on these elements, things that were known in the art, a travel bar, a spring, a hinge bar. And what he's saying is that as one of our skill in the art, at the time the application was filed, it would have been obvious, one would have known that you could use these things to get a travel bar moving towards the closed position. And so I disagree with the court if the court's saying that that's hindsight. I don't think that is hindsight. What he's doing is he's putting himself, as one of our skill in the art, in the shoes of somebody at the time the application was filed. But you know that there are four elements to the application. Four elements are well known in the art. But the combination is not. The combination is new, putting A, B, and C, D together, and then you look back and say, oh, yes, they're all old elements in the art. Now we know how to put them together. Isn't that hindsight? In that instance, Your Honor, I would agree with you. However, what we have here is not that situation. What we have here is the only novel feature that's been identified with respect to the 685 is a spring unhingement. That was done in 1896 for the very purpose that's claimed by Worldwide. So, I mean, we have over a hundred, I don't know, I haven't done the math, but it's over a hundred years that was known, and that patent is sitting in Mr. Whaley's patent drawer for the very purpose that he used it. And so that's not hindsight, Your Honor. This is over a hundred years ago it was done. Does the court have any further questions? Thank you. In regard to that last colloquy, the stuff by Dr. Ball was never in evidence. It was just in an expert report. The jury never saw that, so it's not in the trial record. Mr. Whaley's visit to his patent drawer came after he knew about our invention, not before. They've never claimed that his development of his Instaclick infringement was prior to our invention. I understand you now to be arguing that, contrary to what I thought you were saying in your briefs, that with respect to this closer to limitation in Claim 13, that wasn't in the prior arc. Right. Wait, wait. The question is where did you argue that in your opening brief? I don't recall seeing it. I don't know if I can point to a place in the opening brief. Well, you've got to argue it in your opening brief to raise it. If it's not in your opening brief, it's been waived. But we argued Claim 13 in our opening brief. You seemed in your opening brief to be saying the real issue with respect to obviousness is a lack of evidence of motivation to combine. You seem to be conceding that all these elements were present in the prior arc. I'm asking you to show me where you argued that this closer to limitation in Claim 13 was not in the prior arc. I honestly don't know if I can do that specifically the way you put it, but we did argue Claim 13 in the opening brief. And I disagree with my opponent here that that limitation is shown in Snyder because if you look... We didn't argue it. It doesn't make any difference whether it's shown in Snyder. You can't show us where you argued this point in your opening brief. It's too late now. Well, we argued the... We definitely argued the no-pin limitation because... Yes, you did. Okay. All right. I think I've used up my rebuttal time. Thank you. Thank you, Mr. West. Case is submitted. Next case is 2011-10.